01
02
03
04
05
06
07
08
09
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

NANCY H. GRAAK,                                     )
                                                   )
                    Plaintiff,                     )       Case No.  CV06-0368-JPD
                                                   )
        v.                                         )
                                                   )       ORDER
JO ANNE B. BARNHART, Commissioner                  )
Social Security Administration,                    )
                                                   )
                    Defendant.                     )
_____           )

## I.  INTRODUCTION AND SUMMARY CONCLUSION

Plaintiff Nancy Graak appeals the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act") after a hearing before an administrative law judge ("ALJ").  For the reasons set forth below, the Court ORDERS that the ALJ's decision be reversed and the case remanded for further administrative proceedings.

## II.  FACTS AND PROCEDURAL HISTORY

Plaintiff is a 46-year-old woman with a college education.  AR 811.  She worked continuously from 1988 until July 2001.  AR 71.  In her most recent job, plaintiff worked for approximately eight years as an office assistant for Pierce County.  *Id*.  Plaintiff  previously worked in a clerical capacity at an animal shelter for four years.  *Id*.  She also worked briefly as a layout artist for a newspaper.  *Id*.

ORDER
PAGE -1

On August 5, 2002, plaintiff applied for DIB.  AR 60-62.  Plaintiff alleges that she became unable to work on August 1, 2001, as a result of multiple conditions including chronic fatigue syndrome ("CFS"), fibromyalgia, chronic sinusitis, hypothyroidism, and depression.  AR 70.  Her application was denied initially and upon reconsideration.  AR 31-34, 38-41.  Plaintiff requested a hearing to appeal the denial of her claim.  AR 42.

An ALJ held a hearing to review plaintiff's application and on March 25, 2005, issued a decision denying benefits.  AR 17-26.  Among other things, the ALJ found that plaintiff retained the residual functional capacity ("RFC") to perform a "significant range of light work," and that there were a "significant number of jobs in the national economy" that plaintiff could perform, such as work as "a routine office clerk."  AR 26.  The ALJ concluded that plaintiff was not disabled for purposes of the Act.  *Id*.  The Appeals Council denied plaintiff's request for review, making the ALJ's March 25, 2005, decision the Commissioner's final decision for purposes of judicial review.  AR 6-8.  Plaintiff timely filed this civil action appealing the ALJ's decision.  Dkt. No. 1.

### III.  JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).  The parties have consented to have this case heard by the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, and Local Rule MJR 13.  Dkt. No. 10.

### IV.  STANDARD OF REVIEW

A reviewing court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole.  *See* 42 U.S.C. 405(g); *see, e.g., Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).  Substantial evidence is defined as "more than a mere scintilla but less than a preponderance."  *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (citations and quotations omitted).  It is "such relevant evidence as a reasonable mind might accept as

ORDER
PAGE -2

01 adequate to support a conclusion." *Id.* "The ALJ is responsible for determining credibility,

02 resolving conflicts in medical testimony, and resolving ambiguities." *Andrews v. Shalala*, 53

03 F.3d 1035, 1039 (9th Cir. 1995) (citation omitted). "Where the evidence is susceptible to

04 more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's

05 conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citation

06 omitted).

## V. EVALUATING DISABILITY

08    As the claimant, Ms. Graak bears the burden of proving that she is disabled within the

09 meaning of the Act. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). Disability is

10 defined as the "inability to engage in any substantial gainful activity by reason of any medically

11 determinable physical or mental impairment, which can be expected to result in death, or which

12 has lasted or can be expected to last for a continuous period of not less than twelve months[.]"

13 42 U.S.C. § 423(d)(1)(A). A claimant is disabled only if her impairments are of such severity

14 that she is not only unable to do her previous work, but cannot, considering her age, education,

15 and work experience, engage in any other substantial gainful activity existing in the national

16 economy. *See* 42 U.S.C. § 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99

17 (9th Cir. 1999). In addition, a claimant applying for DIB must show that she was covered by

18 the social security disability insurance program at the time of the injury's onset or occurrence.

19 *See* 42 U.S.C. §§ 416(i)(3), 423(c)(1); 20 C.F.R. § 404.130(b).

20    The Social Security regulations set out a five-step sequential evaluation process for

21 determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §

22 404.1520. At step 1, the claimant must establish that she is not engaging in any substantial

23 gainful activity. 20 C.F.R. § 404.1520(b). If the claimant establishes that she has not engaged

24 in any substantial gainful activity during the relevant time period, the Commissioner proceeds

25 to step 2. At step 2, the claimant must establish that she has one or more medically severe

26 impairments, or combination of impairments, that limit her physical or mental ability to do basic

01  work activities.  20 C.F.R. § 404.1520(c).  If the claimant does not have such impairments, she

02  is not disabled.  *Id.*  If the claimant's impairment is severe, the Commissioner moves to step 3

03  to determine whether the impairment meets or equals any of the listed impairments described in

04  the regulations.  20 C.F.R. § 404.1520(d).  A claimant who meets or equals one of the listings

05  for the requisite twelve-month duration is disabled.  *Id.*

06          When the claimant's impairment neither meets nor equals one of the impairments listed

07  in the regulations, the Commissioner must proceed to step 4 and evaluate the claimant's RFC.

08  20 C.F.R. § 404.1520(e).  Here, the Commissioner evaluates the physical and mental demands

09  of the claimant's past relevant work to determine whether the claimant can still perform that

10  work.  *Id.*  If the claimant is not able to perform her past relevant work, the burden shifts to the

11  Commissioner at step 5 to show that the claimant can perform some other work that exists in

12  significant numbers in the national economy, taking into consideration the claimant's RFC, age,

13  education, and work experience.  20 C.F.R. § 404.1520(f); *Tackett*, 180 F.3d at 1100.  If the

14  Commissioner finds the claimant is unable to perform other work, then the claimant is found

15  disabled and benefits may be awarded.

16                                  VI.  DECISION BELOW

17          On March 25, 2005, the ALJ issued a decision denying plaintiff's request for benefits

18  and made the following findings:

19          1.     The claimant meets the nondisability requirements for a period of
                   disability and Disability Insurance Benefits set forth in Section 216(i) of
20                 the Social Security Act and is insured for benefits through the date of
                   this decision.
21
            2.     The claimant has not engaged in substantial gainful activity since the
22                 alleged onset of disability.

23          3.     The claimant's dysthymia, somatic disorder not otherwise specified, a
                   personality disorder, musculoskeletal disorder, and chronic fatigue
24                 syndrome/fibromyalgia are considered "severe" based on the
                   requirements in the Regulations 20 CFR § 404.1520(c).
25
            4.     These medically determinable impairments do not meet or medically
26                 equal one of the listed impairments in Appendix 1, Subpart P,

ORDER
PAGE -4

Regulation No. 4.

5.  The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

6.  The claimant has the following residual functional capacity: she has the ability to lift and carry 20 pounds occasionally and 10 pounds frequently. She can sit, stand, and walk for a total of 6 hours in an 8-hour workday and sit for 6 hours in a workday. She would have no limitations with regard to pushing or pulling. The claimant has the ability to understand, remember, and carry out simple instructions; make simple work-related decisions necessary to function in unskilled work; respond appropriately to supervisors, coworkers, and usual work situations and deal with changes in a routine work setting.

7.  The claimant is unable to perform any of her past relevant work (20 CFR § 404.1565).

8.  The claimant is a "younger individual" (20 CFR § 404.1563).

9.  The claimant has "more than a high school (or high school equivalent) education" (20 CFR § 404.1564).

10. The claimant has no transferable skills from any past relevant work and/or transferability of skills is not an issue in this case (20 CFR § 404.1568).

11. The claimant has the residual functional capacity to perform a significant range of light work (20 CFR § 404.1567).

12. Although the claimant's exertional limitations do not allow her to perform the full range of light work, using the Medical-Vocational Rule 202.21 as a framework for decision-making, there are a significant number of jobs in the national economy that she could perform. Examples of such jobs include work as a routine office clerk (DOT #209.562-010).

13. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR § 404.1520(g)).

AR 25-26.

## VII.  ISSUES ON APPEAL

Plaintiff raises the following issues on appeal:

A.  Did the ALJ erroneously reject or ignore the supportive opinions of plaintiff's treating doctors?

ORDER
PAGE -5

01      B.      Did the ALJ improperly determine that plaintiff was not credible?

02      C.      Did the ALJ give a hypothetical to the vocational expert that failed to
                accurately reflect all of plaintiff's limitations?

03

04      D.      Did the ALJ err by rejecting testimony of lay witnesses?

05                              VIII.  DISCUSSION

06      A.      <u>The ALJ Erred By Rejecting or Ignoring the Opinions of Plaintiff's
                Treating Physicians Without Giving Specific and Legitimate Reasons</u>

07              <u>for Doing So</u>.

08      Plaintiff argues that the ALJ erred by failing to accord proper weight to the favorable

09  opinions of her treating doctors.  Dkt. No. 11 at 6.  The Commissioner asserts that the ALJ

10  gave specific and legitimate reasons for rejecting certain opinions and, therefore, that the

11  ALJ's treatment of the medical testimony was adequate.  Dkt. No. 13 at 7.

12      Because treating physicians are "employed to cure and [have] a greater opportunity to

13  know and observe the patient as an individual," their opinions are given greater weight than

14  the opinions of other physicians.  *Rodriguez v. Bowen*, 876 F.2d 759, 761 (9th Cir. 1989)

15  (citations omitted).  A treating physician's opinion, however, is not necessarily conclusive as

16  to either a physical condition or the ultimate issue of disability; and an ALJ may disregard a

17  treating physician's opinion whether or not that opinion is contradicted by other medical

18  evidence.  *Id.* at 761-62 & n.7;  *Magallanes*, 881 F.2d at 751.

19      A treating physician's opinion that has not been contradicted by another physician,

20  however, may be rejected only for "clear and convincing" reasons supported by substantial

21  evidence in the record.  *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998).  This requires

22  that the ALJ provide a "detailed and thorough summary of the facts and conflicting clinical

23  evidence" and explain his interpretations and findings based thereon.  *Id.* at 725 (citation

24  omitted).  Mere conclusions are not enough.  *Id.*  Similarly, an ALJ must defer to a treating

25  physician's opinion, even when controverted by other medical opinions, unless the ALJ

26  provides "specific, legitimate reasons for doing so that are based on substantial evidence in

ORDER
PAGE -6

01  the record." *See Andrews*, 53 F.3d at 1041 (citations omitted), *see also Magallanes*, 881 F.3d

02  at 751.

03           1.     Dr. Ranheim's Opinion

04           Dr. Phillip Ranheim is one of plaintiff's treating physicians.  Dr. Ranheim first saw

05  plaintiff in 2002 and treated her regularly through March 2003.[1]  AR 464-69, 506-07, 598-99.

06  During that time period, he noted that plaintiff suffered from multiple illnesses and conditions

07  including:  chronic illness associated with exposure to molds, "ongoing chronic fatigue

08  syndrome," nutritional deficiencies, chronic sinusitis, fibromyalgia, and depression.  *Id*.  Dr.

09  Ranheim saw plaintiff in December 2004 to examine her in connection with her DIB

10  application.  Upon the request of plaintiff's attorney, Dr. Ranheim wrote a letter in which he

11  opined that plaintiff "is unable to perform usual work-related activities and should qualify for

12  Social Security disability benefits based upon fibromyalgia syndrome and CFS."  AR 604.

13           The ALJ did not credit Dr. Ranheim's opinion regarding plaintiff's disability.  AR 21.

14  He determined that Dr. Ranheim's opinion was entitled to "less weight" because the doctor

15  had "given up his non-biased position" and was acting as an "advocate" for plaintiff.  *Id*.

16  This conclusion was apparently based upon the letter Dr. Ranheim had written to plaintiff's

17  attorney.  The ALJ also concluded that Dr. Ranheim based his opinion on plaintiff's self-

18  reported symptoms from one appointment, which was scheduled for "litigation purposes."  *Id*.

19   Further, the ALJ noted that the limitations Dr. Ranheim assessed were not consistent with his

20  treatment notes.

21           Dr. Ranheim was plaintiff's treating physician and his opinion, regarding the extent of

22  plaintiff's disability, was contradicted by other medical-expert testimony.  *See*, *e.g.*, AR 488-

23  93.  Thus, the ALJ was obligated to either credit Dr. Ranheim's opinions, or to provide

24  specific and legitimate reasons, based on substantial evidence in the record, for rejecting

25  _____

26           [1]The ALJ's opinion makes no mention of Dr. Ranheim's evaluations of plaintiff from
     2002.  AR 21.

ORDER
PAGE -7

01   them.  For the reasons set forth below, the ALJ failed to meet this standard.

02                   a.     The ALJ's determination, that Dr. Ranheim was
                           acting as an advocate for the plaintiff, is not
03                            supported by the record.

04      The ALJ's opinion and the Commissioner's brief both cite, *Matney v. Sullivan*, 981

05   F.2d 1016, 1019-20 (9th Cir. 1992), in support of the proposition that ALJs are entitled to

06   reject doctors' opinions that cross the line into the realm of advocacy.  AR 21; Dkt. No. 13 at

07   8.  The doctor's opinion at issue in *Matney* is distinguishable from that of Dr. Ranheim.  In

08   *Matney*, the doctor had examined the claimant one time and had "*agreed* to become an

09   advocate and assist in presenting a meaningful petition for Social Security benefits."  *Matney*,

10   981 F.2d  at 1019 (emphasis added).  In contrast, Dr. Ranheim treated plaintiff several times

11   over the course of approximately two and a half years.  AR 468, 603.  Additionally, there is

12   no evidence that Dr. Ranheim "agreed" to act as an advocate for plaintiff.  To the contrary,

13   Dr. Ranheim's letter contains numerous observations that tend to indicate the neutrality of his

14   opinion.  AR 603-04 ("[plaintiff] is able to sit for prolonged periods of time," "[plaintiff's]

15   ability to hear and speak is fair," "[plaintiff] is able to reason, make decisions, perform

16   routine tasks, and interact with others," "[o]n the other hand, [plaintiff's] ability to sustain

17   concentration she reports as poor").

18      "An examining doctor's findings are entitled to no less weight when the examination

19   is procured by the claimant than when it is obtained by the Commissioner . . . [t]he Secretary

20   may not assume that doctors routinely lie in order to help their patients collect disability

21   benefits."  *Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1995) (citation and quotation omitted);

22   *see also Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) (noting that source of

23   patient's referral was improper basis for assessing doctor's credibility, where doctor's opinion

24   was based on an examination of claimant, where there was no inconsistency between his report

25   and his treating notes, and where there was no evidence of any actual improprieties or evidence

26   that doctor was attempting to mislead the ALJ).  Dr. Ranheim wrote a letter summarizing his

01  findings and concluded that plaintiff was unable to work. AR 603. There is nothing

02  improper about a doctor providing a letter documenting and summarizing a patient's medical

03  status. In short, the record does not demonstrate any bias on the part of Dr. Ranheim and the

04  ALJ is not permitted to infer that such bias existed simply because the doctor's opinion was

05  procured by plaintiff's attorney. *Nguyen*, 100 F.3d at 1465. The asserted advocacy is not a

06  legitimate basis to reject or discredit Dr. Ranheim's opinion.

07                     b.    The ALJ mischaracterized Dr. Ranheim's basis
                             for his opinion regarding plaintiff's disability.
08

09          The ALJ also noted that Dr. Ranheim "based his opinion on [plaintiff's] self-report

10  during this one visit in December 2004, which was scheduled for litigation purposes." AR

11  21. This conclusion is not supported by the record. Although Dr. Ranheim undoubtedly did

12  rely on plaintiff's self-reporting of her symptoms, he also conducted a physical examination.

13  AR 604. For example, Dr. Ranheim wrote that "[o]n examination, the patient was alert" and

14  that  "[t]here were 12 tender points noticed over the typical . . . distribution." *Id.*

15  Additionally, Dr. Ranheim had treated and examined the plaintiff on several prior occasions

16  and, although not explicitly stated, it is reasonable to assume that he also relied, at least in

17  part, on these previous assessments in rendering his opinion. *See Lester*, 81 F.3d at 833

18  (noting that the "treating physician's continuing relationship with the claimant makes him

19  especially qualified to . . . form an overall conclusion as to functional capacities and

20  limitations, as well as to prescribe or approve the overall course of treatment").

21          The Court also notes that it is common and accepted practice for a doctor to base his

22  diagnosis of CFS on the self-reported symptoms of his patient and the ruling out of other

23  possible illnesses. *See Reddick*, 157 F.3d at 726 (noting that the Centers for Disease Control

24  defines CFS as "self-reported persistent or relapsing fatigue lasting six or more consecutive

25  months" and that "the presence of persistent fatigue is *necessarily self-reported*") (emphasis

26  added). Therefore, the ALJ is not permitted to reject the opinion of Dr. Ranheim on the

ORDER
PAGE -9

01 | premise that it was based in-part on plaintiff's subjective complaints.

02 |         c.    The ALJ's conclusion that Dr. Ranheim's
03 |               assessment of plaintiff was not consistent with
               his treatment notes failed to take into account the
               waxing and waning nature of CFS.
04 |

05 |        The ALJ stated that "the limitations [Dr. Ranheim] imposed are not consistent with his
06 | treatment notes."  AR 21.  In support of this determination, the ALJ cites three examples of
07 | plaintiff's relatively favorable reports to Dr. Ranheim.  *Id.*  The ALJ does not specifically
08 | explain how these notations undermined Dr. Ranheim's opinion that plaintiff was unable to
09 | perform "usual work-related activities."  AR 64.  When read in its entirety, Dr. Ranheim's
10 | opinion does not suggest that plaintiff is entirely unable to function; rather, he notes that
11 | plaintiff's symptoms render her unable to function productively for more than a "severely
12 | limited" period of time.  *Id.*  This inability to function on a sustained basis is consistent with a
13 | diagnosis of CFS.  *See Reddick*, 157 F.3d at 722 (holding that periods of sporadic activities
14 | punctuated with a need to rest are not inconsistent with CFS, which is characterized by
15 | periods of exacerbation and remission) (internal citation omitted); *see also Fair v. Bowen*,
16 | 885 F.2d 597, 603 (9th Cir. 1989) (noting that "[m]any home activities are not easily
17 | transferable to . . . the more grueling environment of the workplace, where it might be
18 | impossible to periodically rest or take medication").

19 |        The ALJ's reasons for rejecting the opinion of Dr. Ranheim are not based on
20 | legitimate reasons supported by the record.  On remand, the ALJ is directed to evaluate the
21 | testimony of Dr. Ranheim.

22 |         2.    Dr. Preston's Opinion

23 |        Myra Preston, Ph.D., evaluated plaintiff in December 2001 and administered a
24 | quantitative electroencephalogram ("QEEG"), a tool for mapping and analyzing brainwave
25 | activity.  AR 386-89.  She opined that the results of the QEEG correlated with the CFS
26 | symptoms that plaintiff reported.  AR 387-88.  She also opined that "Ms. Graak is not capable

ORDER
PAGE -10

01  of performing the duties essential to the functions of her occupation.  She is not suitable to be

02  trained for other duties due to her cognitive dysfunction."  AR 388.

03        The ALJ gave "no significant weight" to Dr. Preston's findings.  AR 19.  He rejected

04  the results of Dr. Preston's testing because "[the QEEG ] has not been commonly recognized

05  as a diagnostic tool throughout the medical community to evaluate cognitive responses related

06  to chronic fatigue (SSR 99-2p), nor has the American College of Rheumatology (ACR)

07  reported the use of this as a measure to evaluate cognitive response in connection with

08  fibromyalgia."  AR 19.

09        Plaintiff argues that the ALJ did not use the proper legal test for accepting or rejecting

10  diagnostic testing for CFS, and further, that the QEEG test meets the standard promulgated by

11  the Social Security Administration ("SSA") for diagnosing CFS.  Dkt. No. 11 at 8-9.  The

12  Commissioner contends that the ALJ's rejection of Dr. Preston's evidence was proper because

13  the opinion was based on unproven methods.  Dkt. No. 13 at 8.

14        Social Security Ruling 99-2p lists several medical signs and laboratory findings that

15  may be used to establish the existence of a medically determinable impairment in individuals

16  with CFS.  SSR 99-2p at *3.  It states that:  "[t]he existence of CFS may be documented with

17  medical signs or laboratory findings other than those listed [here], provided that such

18  documentation is *consistent with medically accepted clinical practice and is consistent with*

19  *the other evidence in the case record*."  *Id*. at *2-3 (emphasis added).  Thus, the SSA does not

20  mandate that a diagnostic tool for CFS be "commonly recognized . . . throughout the medical

21  community."  The SSA only requires that the medical findings be "consistent with medically

22  accepted clinical practice" and "consistent with the other evidence in the case record."  *Id*.

23        Dr. Preston was a treating physician and her opinions were contradicted by other

24  medical-expert testimony.  *See*, *e.g.*, AR 488-93.  The ALJ was therefore obligated to either

25  credit Dr. Preston's opinions, or to provide specific and legitimate reasons, for rejecting them.

26  The ALJ did not meet this burden.  An ALJ is required to do more than make conclusory

01 statements. *See Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988).  The ALJ "must set

02 forth his own interpretations and explain why they, rather than the doctors', are correct." *Id*.

03 at 421-22.  Here, the ALJ reached a conclusory determination that Dr. Preston's opinion,

04 supported by a QEEG analysis, was not entitled to significant weight.  Dr. Preston is a

05 neurophysiologist with specialties in neuroscience and physiological psychology.  AR 386.

06 The ALJ was supplied with a medical-literature review that documents support for the use of

07 QEEG evaluations.  AR 605-83.  The ALJ did not cite any authority or make any findings to

08 explain why Dr. Preston's evaluation of the plaintiff was not consistent with medically

09 accepted clinical practice.  Additionally, because the ALJ did not believe that the QEEG had

10 been commonly accepted by the medical community, he rejected Dr. Preston's entire opinion

11 and evaluation.  However, Dr. Preston's opinions were not confined to merely reporting the

12 results of the QEEG analysis.  Instead, she also reported that:

> [T]he findings . . . clinically correlate with [plaintiff's] responses to the Multiple
> Symptom Questionnaire.  These symptoms include poor memory, confusion,
> concentration difficulties, slow processing speed, difficulty in making decisions,
> trouble with calculating, wide mood swings, depression, physical fatigue and
> sluggishness, motivational fatigue, restlessness, irregular heartbeat, rapid
> heartbeat and other autonomic dysfunction, sleep disorder and immune
> dysfunction.

17 AR 388.

18       On remand, the ALJ is directed to evaluate Dr. Preston's opinion in its entirety, and to

19 re-evaluate Dr. Preston's testimony regarding the QEEG test in light of the "medically

20 accepted clinical practice" standard outlined in SSR 99-2p.

21              3.      Dr. Lidren

22       Donna Lidren, Ph.D., was plaintiff's treating psychologist.  AR 391-407.  In August

23 2001, Dr. Lidren noted that plaintiff suffered from fibromyalgia and CFS, and that plaintiff

24 met the criteria for major depression, dysthymia, and generalized anxiety disorder.  AR 404.

25 Dr. Lidren also opined that plaintiff "may no longer be able to maintain work on a consistent

26 level." *Id*.  The ALJ's decision either ignored, implicitly rejected, or failed to consider Dr.

01  Lidren's testimony.  On remand, the ALJ should properly evaluate Dr. Lidren's opinions.

02              4.      Dr. Ahmad

03      The administrative record includes medical records from Dr. Naila Ahmad, who

04  examined plaintiff in January 2005.  AR 766.  She conducted a physical examination of

05  plaintiff and noted that she had a number of symptoms consistent with CFS, including "18 of

06  18 tender points."  AR 767.  Plaintiff argues that the ALJ ignored the testimony of Dr. Ahmad

07  without analysis.  Dkt. 11 at 9.  The Commissioner argues that the ALJ had no obligation to

08  reject Dr. Ahmad's testimony because she "did not find disability and was not listed as a

09  doctor."  Dkt. 13 at 8.

10      Dr. Ahmad's opinion, at least with regard to the tender points, appears to be

11  uncontradicted.  As with treating physicians, the uncontradicted opinions of an examining

12  physician may not be rejected without clear and convincing reasons.  *Lester*, 81 F.3d at 830.

13  It is true that plaintiff did not list Dr. Ahmad as a doctor in the "Disability Report" form that

14  she initially filled out for the SSA.  This is likely because that form was prepared in 2002, and

15  plaintiff's appointment with Dr. Ahmad was not until 2005.  AR 69-95, 78.  However, the

16  "List of Exhibits" in the table of contents of the administrative record contains the heading,

17  "Medical report from Naila Ahmad, MD dated 1/18/05," and lists the correct corresponding

18  page numbers.  AR 4.  Dr. Ahmad's  treatment notes show that she conducted an interview

19  with plaintiff, performed a physical examination, and rendered an assessment.  AR 766-68.

20  Dr. Ahmad's opinion was part of the record before the ALJ.  AR 766-68.  Therefore, the ALJ

21  was obligated to consider that testimony.  It was erroneous for the ALJ to simply ignore the

22  examining doctor's opinion without mention.  On remand, the ALJ should properly evaluate

23  the testimony of Dr. Ahmad.

24

25          B.      The ALJ Improperly Rejected Plaintiff's Own Testimony as Being Not
                    Credible.

26

ORDER
PAGE -13

01      The ALJ determined that plaintiff was "not entirely credible on this record in that

02  there are no objective findings to support the degree of limitations she has alleged."  AR 23.

03  He also noted that plaintiff stated that she suffered from migraines but that her medical

04  records did not reflect any "workup" for that condition.  *Id.*  Lastly, the ALJ cited examples

05  from the record of activities he found inconsistent with the level of impairment that plaintiff

06  alleged.  *Id.*  Plaintiff argues that the ALJ erred by rejecting her testimony as not credible

07  without making specific findings about what testimony he deemed to have undermined her

08  credibility.  Dkt. No. 11 at 10.  Plaintiff further argues that the ALJ arbitrarily discredited her

09  testimony about pain and related symptoms.  *Id.*  The Commissioner contends that the ALJ

10  gave clear and convincing reasons for rejecting plaintiff's testimony.  Dkt. No. 13 at 6.

11      When evaluating a claimant's credibility, the ALJ must specifically identify what

12  testimony is not credible and what evidence undermines the claimant's complaints; general

13  findings are insufficient.  *Reddick*, 157 F.3d at 722 (citations omitted).  The ALJ may consider

14  "ordinary techniques of credibility evaluation" including a reputation for truthfulness,

15  inconsistencies in testimony or between testimony and conduct, daily activities, work record,

16  and testimony from physicians and third parties concerning the nature, severity, and effect of

17  the symptoms of which claimant complains.  *Smolen*, 80 F.3d at 1284 (internal citations

18  omitted).

19          1.      The ALJ improperly discredited plaintiff's subjective
                    symptom testimony.

20

21      According to the Commissioner's regulations, a determination of whether to accept a

22  claimant's subjective symptom testimony requires a two-step analysis.  20 C.F.R. § 404.1529;

23  *Smolen*, 80 F.3d at 1281; SSR 96-7p.  First, the ALJ must determine whether there is a

24  medically determinable impairment that reasonably could be expected to cause the claimant's

25  symptoms.  20 C.F.R. § 404.1529(b); *Smolen*, 80 F.3d at 1281-2; SSR 96-7p.  Once a claimant

26  produces medical evidence of an underlying impairment, the ALJ may not discredit the

ORDER
PAGE -14

01   claimant's testimony as to the severity of symptoms solely because they are unsupported by

02   objective medical evidence.  *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc);

03   *Reddick*, 157 F.3d 715, 722 (9th Cir. 1998) (internal citations omitted).  Absent affirmative

04   evidence showing that the claimant is malingering, the ALJ must provide "clear and

05   convincing" reasons for rejecting the claimant's testimony.  *Reddick*, 157 F.3d at 722 (citation

06   omitted).  Here, there are no allegations that plaintiff was malingering, so the ALJ was

07   required to provide clear and convincing reasons for rejecting her testimony.  The ALJ,

08   however, failed to meet this burden.

09       As stated above, once a claimant produces medical evidence of an underlying

10   impairment, the ALJ may not discredit a claimant's testimony as to the severity of her

11   symptoms solely because they are unsupported by objective medical evidence.  That is

12   precisely what occurred in this case.  It is undisputed that plaintiff produced evidence of an

13   underlying impairment.  AR 25, findings 3-4.  The ALJ found that plaintiff suffered from

14   multiple medically determinable impairments, including CFS and fibromyalgia.  *Id*.  The

15   ALJ's belief that there was a lack of objective evidence was an improper basis for discrediting

16   plaintiff's testimony regarding the severity of her symptoms and the degree to which she was

17   limited by them.

18           2.      The record shows that plaintiff reported to her doctors
                    that she suffered from migraines on several occasions.
19

20       The ALJ also stated that plaintiff testified that she suffers from headaches and takes

21   medicine for migraines but that there was "no record of workup for this condition."  AR 23.

22   Although it is not clear precisely what the ALJ meant by the term "workup," the plaintiff's

23   medical records demonstrate that she reported suffering from migraines and headaches

24   numerous times.  AR 237, 241, 349, 466, 468-69, 565.  On at least one occasion, plaintiff told

25   her doctor that she uses "XS tylenol" when she gets a migraine, and then takes "Imitrex" if it

26   persists.  AR 565.  Therefore, plaintiff's testimony regarding the headaches and migraines is

01 supported by the medical evidence in the record.  The ALJ erred by discrediting plaintiff's

02 credibility on this basis.

03          3.       The fact that plaintiff may have engaged in sporadic,
                     increased levels of activity is not necessarily inconsistent
04                   with the nature of her alleged disability.

05          The ALJ noted that, on occasion, plaintiff had engaged in activities that were

06 inconsistent with the limitations she had otherwise described.  AR 23.  It appears that the ALJ

07 based this observation in large part on a report, dated February 2, 2004, from one of

08 plaintiff's doctors, which included a note that plaintiff had been taking care of her

09 stepchildren and had joined several craft and activity groups with her mother-in-law.  AR

10 562.  However, the only evidence the ALJ cited as proof of plaintiff's heightened level of

11 activity, out of a record more than 800 pages, was a single report, based on a single

12 conversation that plaintiff had during a medical appointment.  AR 23, 562.  Further, the ALJ

13 does not point out that, during that same conversation, plaintiff stated that she felt "very

14 tired," and that caring for her stepchildren had "been difficult but she is managing."  AR 562.

15 Additionally, plaintiff stated only that she had "joined" the activity groups; the ALJ cites no

16 follow-up conversation to suggest plaintiff actually participated in these groups for any

17 significant period of time.  In fact, plaintiff's mother-in-law, Dena Graak, wrote a letter in the

18 record in which she stated "[w]e tried a senior exercise class when I first moved here, but

19 [plaintiff] could not tolerate it at all."  AR 152.  Thus, the record does not support the ALJ's

20 conclusion that plaintiff engaged in activities that were inconsistent with the symptoms she

21 reported.

22          Moreover, assuming that plaintiff did occasionally engage in the activities described,

23 such behavior is not inconsistent with the nature of plaintiff's alleged disabilities, particularly

24 CFS.  Plaintiff testified, and her medical records indicate, that some days are much worse for

25 her than others.  AR 819-26, 464-69.  This testimony is consistent with the characteristics of

26 CFS.  *See* SSR 99-2p at *1 (defining CFS as "a systemic disorder consisting of a complex of

01  symptoms that may vary in incidence, duration, and severity"); *see also Reddick*, 157 F.3d at

02  722.  The fact that plaintiff occasionally has the capacity to watch her stepchildren, or even to

03  join an activity group, does not mean she is capable of consistently performing in a stressful

04  and structured work environment.  20 C.F.R. § 404, Subpt. P., App. 2, § 200.00(c) (defining

05  RFC as "the maximum degree to which the individual retains the capacity for *sustained . . .*

06  [work]") (emphasis added); *see also Lester*, 81 F.3d at 833 (noting that "[o]ccasional

07  symptom-free periods are not inconsistent with disability").

08          The ALJ's justifications for rejecting plaintiff's testimony were insufficient.  On

09  remand, the ALJ should properly credit plaintiff's testimony, or provide clear and convincing

10  reasons for rejecting it.

11          C.      The ALJ Failed to Give an Accurate Hypothetical to the Vocational
                    Expert.
12

13          Plaintiff argues that the ALJ committed reversible error by failing to submit a

14  hypothetical to the vocational expert ("VE") that accurately reflected all of plaintiff's

15  limitations.  Dkt. No. 11 at 12.  Additionally, plaintiff argues that the ALJ's opinion

16  mischaracterizes the VE's testimony.  Dkt. No. 14 at 7.  In her brief, the Commissioner does

17  not address the deficiencies with the hypothetical and the VE testimony raised by plaintiff.

18          After a claimant has demonstrated that she has a severe impairment that prevents her

19  from doing her past relevant work, she has made a *prima facie* showing of disability.  *Tackett*,

20  180 F.3d at 1100-01.  The burden then shifts to the Commissioner at step 5 to demonstrate

21  that, in light of the claimant's RFC, age, education, and work experience, she can perform

22  other types of work that exist in "significant numbers" in the national economy.  *Id.*; 20 C.F.R.

23  § 404.1560(b)(3).  The Commissioner may meet this burden by referencing the Medical-

24  Vocational Guidelines (or the "Grids"), a matrix system that provides uniform conclusions

25  about the availability of work for similarly situated persons, in light of their physical limitations.

26  *See* 20 C.F.R. Part 404, Subpt. P, App. 2.

ORDER
PAGE -17

01        However, since the Grids are based solely on strength and exertional factors, they may

02 not be used for a claimant who suffers from non-exertional limitations. *See* 20 C.F.R. Part

03 404, Subpt. P, App. 2, § 200.00(b). When the Grids fail to describe accurately a claimant's

04 limitations, as they did in this case, the ALJ should use them only as a framework and should

05 solicit the testimony of a VE. *Reddick*, 157 F.3d at 729; *Tackett*, 180 F.3d at 1101.  The ALJ

06 must provide the VE with an accurate and detailed description of all the claimant's physical

07 and mental limitations that are supported by the record. *Thomas*, 278 F.3d. at 956; *Tackett*,

08 180 F.3d at 1101.

09        In this case, the ALJ properly employed the assistance of a VE at plaintiff's hearing.

10 However, the ALJ's inquiries to the VE yielded practically indecipherable results.  AR 827-33.

11 There are two major problems with the VE-testimony on record.  First, the ALJ never actually

12 posed a hypothetical to the VE, complete or otherwise.  When plaintiff's attorney asked the

13 ALJ, "are you going to ask [the VE] a, a hypothetical?," the ALJ simply responded, "I don't

14 have any questions.  If you want to ask some more questions, you're welcome to.  This is, this

15 is your case."  AR 831.  Plaintiff's attorney then proceeded to ask the VE whether plaintiff was

16 capable of performing any of her previous jobs, to which the VE responded "I do not believe

17 she could return to any of those."  AR 832.  Thus, a hypothetical was never submitted to the

18 ALJ.

19        This leads to the second problem regarding the VE's testimony.  As mentioned, the VE

20 testified that she believed that plaintiff could not return to any of her previously held jobs,

21 which included work as a routine office clerk.  AR 832, 71.  Yet, the ALJ concluded that

22 plaintiff retained the RFC to work as "a routine office clerk."  AR 26, findings 7, 11, 12.  The

23 ALJ did not address the inconsistency between these findings and the VE's testimony.  To the

24 contrary, the ALJ's opinion stated:

25        The vocational expert agreed that the claimant would be able to work as a
         routine office clerk (DOT #209.562-010) performed at the light level with an
26       SVP 3.  This level is borderline unskilled work.  The vocational expert testified

ORDER
PAGE -18

01
02
03

> that an individual with the claimant's age, education, past relevant work experience and residual functional capacity as determined could perform this work with significant numbers of positions in the national economy.  I accept the testimony of the vocational expert.

04 AR 25.

05      The record shows that the VE gave no such testimony.  It appears that the ALJ relied

06 heavily on a "Vocational Decision Worksheet" signed and prepared by a disability adjudicator,

07 not a VE.  AR 139.  This bare-bones form contains no indication as to whether all of plaintiff's

08 physical and mental limitations were considered in arriving at the determination that plaintiff is

09 capable of doing other light, unskilled work.  *Id.*  It is clear from the transcript of the hearing

10 that the VE was not given a hypothetical and that what little testimony the VE did give was

11 misinterpreted and mischaracterized in the ALJ's opinion.  On remand the ALJ is directed to

12 present the VE with a hypothetical that fairly incorporates all of plaintiff's functional

13 limitations that are supported by the record.

14
15

        D.    <u>The ALJ Did Not Erroneously Reject the Testimony of Plaintiff's Lay Witnesses But Should Consider the Testimony of Plaintiff's Mother-in-law on Remand</u>.

16      The record before the ALJ included testimony from three lay witnesses.  William

17 Graak, plaintiff's husband, and Melanie Stillman, plaintiff's friend and "carpooler," each

18 filled out a "Daily Activities Questionnaire" documenting their impressions of plaintiff's day-

19 to-day activities.  AR 100-09.  Dena Graak, plaintiff's mother-in-law, also wrote a letter in

20 which she described her interactions and experiences with plaintiff.  AR 152.  Plaintiff argues

21 that the ALJ rejected the lay-witness testimony without reason.  Dkt. No. 11 at 13.  The

22 Commissioner argues that the ALJ did not reject the lay witnesses' statements, rather, he

23 noted them and gave them some weight, except where they were inconsistent with other

24 evidence in the record.  Dkt. No. 13 at 9.

25      In order to determine whether a claimant has an impairment, an ALJ may consider

26 lay-witness sources, such as testimony by friends and family members.  20 C.F.R. §

ORDER
PAGE -19

01   404.1513(d)(4).  Lay-witness testimony as to a claimant's symptoms or as to how an

02   impairment affects claimant's ability to work is competent evidence.  20 C.F.R. §

03   404.1513(e); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) (citations omitted).

04   Therefore, such testimony cannot be disregarded without comment.  *Dodrill v. Shalala*, 12

05   F.3d 915, 918-19 (9th Cir. 1993).  If an ALJ wishes to discount the testimony of a lay

06   witness, he must provide reasons germane to each witness and may not categorically discredit

07   the testimony.  *Lewis*, 236 F.3d at 511.  Identifying inconsistencies between such statements

08   and the record as a whole is sufficient.  *Id.*

09        The ALJ acknowledged the testimony of Mr. Graak and Ms. Stillman.  AR 23.  He

10   gave their testimony "some weight, but only to the extent that they support the findings

11   established in this decision."  *Id.*  The ALJ then noted that the "[lay-witness] statements are

12   inconsistent with the claimant's reports to various treating sources."  *Id.*  He gave examples of

13   what he took to be inconsistencies between the plaintiff's testimony and that of the lay

14   witnesses.  *Id.*  However, in light of the errors identified above regarding the evaluation of

15   medical testimony, the ALJ is directed to reconsider these lay-witness statements.  Moreover,

16   the ALJ did not mention the letter from Dena Graak in his opinion.  On remand, the ALJ

17   should also consider the testimony of Ms. Dena Graak, or give germane reasons for

18   disregarding it.

19                              IX.  CONCLUSION

20        For the reasons set forth in this order, this case is remanded for further administrative

21   proceedings not inconsistent with this opinion.  Upon remand the ALJ shall correct the

22   deficiencies identified above, with emphasis on the following:  (1) reevaluate the medical

23   opinions of Dr. Ranheim and Dr. Preston; (2) evaluate the medical opinions of Dr. Lidren and

24   Dr. Ahmad; (3) reevaluate the adverse-credibility determination of plaintiff; (4) provide the VE

25   with a hypothetical that accurately reflects all of plaintiff's limitations; and (5) address the lay-

26   witness testimony.

ORDER
PAGE -20

01      DATED this 6th day of September, 2006.

02

03

04                              JAMES P. DONOHUE

05                              United States Magistrate Judge

06

07

08

09

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER
PAGE -21